# UNITED STATES DISTRICT COURT
for the
_____ District of _____

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. MJ-24-854-CMS
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ❒ evidence of a crime;
  ❒ contraband, fruits of crime, or other items illegally possessed;
  ❒ property designed for use, intended for use, or used in committing a crime;
  ❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

  *Code Section*                         *Offense Description*

The application is based on these facts:

  ❒ Continued on the attached sheet.
  ❒ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/19/2024

*Judge's signature*

City and state: _____

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE ASSOCIATED TO PHONE NUMBER 1-405-900-1428, IMEI# 357492491529622, IN THE CUSTODY OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, AND CURRENTLY LOCATED IN THE WESTERN DISTRICT OF OKLAHOMA | Case No. __MJ-24-854-CMS_____ |

**AFFIDAVIT IN SUPPORT OF
<u>AN APPLICATION FOR A SEARCH WARRANT</u>**

I, David J. McCauley, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1. I am a Special Agent with Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since June 2018. I am currently assigned to the ATF Oklahoma City Office, where I have been involved in a wide variety of investigative matters, including investigations targeting drug trafficking organizations (DTO), most of which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846 as well as firearms trafficking organizations (FTO) in violation of 18 U.S.C. §§ 932 and 933. As part of my investigative experience as a special agent, I have executed search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and

federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

2. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that **AUSTIN GAGE OSBORN** has trafficked firearms in violation of 18 U.S.C. § 933(a)(1) and engaged in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a).

3. I am submitting this affidavit in support of a search warrant authorizing a search of **OSBORN's** cellular telephone: an Android, model Revvl 5+, with phone number **+1 (405) 900-1428** (hereinafter **SUBJECT PHONE**), as further described in **Attachment A** which is incorporated into this affidavit by reference. The **SUBJECT PHONE** is currently in the ATF's possession in the Western District of Oklahoma. I am submitting this affidavit in support of a search warrant authorizing a search of the **SUBJECT PHONE** for the items specified in **Attachment B** hereto, wherever they may be found, and to seize all items in **Attachment B** as instrumentalities, fruits, and evidence of the aforementioned crimes.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. Based on an investigation conducted by ATF Special Agent David McCauley, **OSBORN** does not have a previous felony conviction. Special Agent McCauley confirmed that Jose Hermosillo has a previous felony conviction.

### July 16th, 2024

6. On July 16, 2024, an ATF Confidential Informant (CI) had an interaction with an individual who identified himself as "Jose" (later identified as Jose Hermosillo) around 6417 NW 10th Street, Oklahoma City, Oklahoma which is in the Western District of Oklahoma. During the interaction, Hermosillo advised that he sells narcotics and had firearms for sale. Particularly, Hermosillo advised that he had Glock firearms with "switches" (also known as machine gun conversion devices or Glock Switches). Hermosillo provided the CI with his contact phone number for future communications.

### July 17th, 2024

7. On July 17, 2024, a firearm purchase was organized between Hermosillo and the CI, as well as ATF Undercover Agents (UCs), which was to take place at 2121 SW 20th Street, Oklahoma City, Oklahoma. Hermosillo communicated via text message and sent a picture which appeared to show a rifle that was being offered for purchase.

8. On July 17, 2024, at approximately 3:23 PM, UC-1, UC-2, and the CI arrived around SW 20th Street in Oklahoma City, Oklahoma. Prior to the interaction with Hermosillo, the UCs and CI activated audio/video recording equipment. As the undercover vehicle (UCV) approached 2121 SW 20th Street, Hermosillo was observed

3

standing outside. As the UCV was parking, Hermosillo approached the vehicle and appeared to be concealing a large item under his clothing.

9. Once the UCV was parked UC-1, UC-2, and the CI met Hermosillo at the rear of the UCV. While at the rear of the vehicle Hermosillo provided UC-1 with a rifle that appeared to be the same firearm that Hermosillo had sent pictures of via text communications. Hermosillo's rifle is described as a Ruger, Model: M77, .308 caliber rifle, bearing serial number 71-95538. UC-1 provided Hermosillo with the eight-hundred dollars ($800) of government funds to complete the transaction for the rifle.

10. UC-1, UC-2, and the CI continued conversation with Hermosillo after the transaction. Hermosillo advised that he sold cocaine and methamphetamine, and that he had several other associates across Oklahoma City that he was willing to put the UCs and CI in contact with should he be unavailable.

11. Hermosillo is a member of the South Side Locos criminal street gang.

## July 25th, 2024

12. On or about July 25, 2024, at approximately 6:41 PM, ATF UC's and the CI conducted an additional purchase of firearms which was coordinated by Hermosillo and took place at 2121 SW 20th Street, Oklahoma City, Oklahoma.

13. Upon arrival, ATF UC-1, UC-3, UC-4, and the CI observed Hermosillo and an unidentified Hispanic male standing near a pickup truck bearing Oklahoma Tag #MRQ907. As UC-1 and the CI approached Hermosillo and the truck, the unidentified Hispanic male walked away from the area. Hermosillo remained near the pick-up truck. As UC-1 and the CI approached, a passenger in the pickup truck handed what appeared to

4

be a firearm to the unidentified driver of the pick-up truck—subsequently identified as **AUSTIN GAGE OSBORN**. When UC-1 and the CI contacted Hermosillo and **OSBORN** at the driver's side of the pickup truck, **OSBORN** was observed in possession of a rifle. He then provided it to UC-1. **OSBORN** then stated, "a little clean, but that shit easy bro". When UC-1 inquired of **OSBORN** if the rifle was fully automatic, **OSBORN** advised that it was not. UC-1 inquired how much the rifle would cost, and Hermosillo stated "nine ($900)." UC-1 provided Hermosillo with $900.00 of prerecorded government funds for the transaction. The firearm was determined to be a Norinco, Model; SKS, 7.62 caliber rifle, bearing serial number 21061538.

14. Post deal surveillance was conducted on **OSBORN's** truck. **OSBORN** was observed stopping and parking at 226 SE 55th Street, Oklahoma City, Oklahoma.

### July 26th, 2024

15. On or about July 26, 2024, at approximately 1:12 PM, UCs and the CI met **OSBORN** and Hermosillo to purchase three (3) firearms, ammunition, and accessories near 2127 SW 20th and 2129 SW 20th, Oklahoma City, Oklahoma, in a deal arranged by Hermosillo.

16. UC-1 and the CI arrived in the UCV and parked at a driveway near the street located between 2127 SW 20th Street and 2129 SW 20th Street. Once the UCV was backed into the driveway, the CI placed a phone call to Hermosillo letting him know of their arrival. While waiting for Hermosillo, UC-1 observed **OSBORN** arrive in his pickup truck with Oklahoma Tag #MRQ907, which was previously observed at the July 25, 2024, firearm transaction.

5

17. UC-1 exited the UCV and approached **OSBORN** on the driver's side of the truck. UC-1 spoke with **OSBORN** who was accompanied by an unidentified passenger. **OSBORN** then exited his vehicle and began to retrieve the previously discussed firearms from the back seat of his pickup truck. **OSBORN** retrieved one (1) box containing one (1) firearm, and UC-1 retrieved two (2) additional boxes that contained one (1) firearm in each box. Once the firearms were retrieved, UC-1, the CI, and **OSBORN** met near the rear of the UCV with the three (3) firearms and placed them in the UCV. **OSBORN** then advised that he also had accessories and ammunition.

18. Hermosillo arrived at the UCV while the transaction was being completed. UC-1 discussed prices of the firearms, ammunition, and accessories with **OSBORN** who agreed to conduct the sale for a total of $3,000.00. UC-1 then provided $3,000 of prerecorded government funds to **OSBORN**. During the encounter, **OSBORN** stated to UC-1 that he "only owned it for like a month". When asked if **OSBORN** shot the firearms he stated, "hell yeah bro." Hermosillo was provided $200 of prerecorded government funds for arranging the transaction with **OSBORN**. When UC-1 inquired if **OSBORN** had any "buttons (Glock Switches)" for sale, **OSBORN** replied, "I got some homies that be comin' across them buttons all the time, bro". UC-1 asked what **OSBORN's** name was, and he replied "**Austin**". The UCV then departed the location with the firearms which are described as follows: (1) a Ruger, model SR1911, .45 caliber pistol, bearing serial number 673-02507; (2) a American Tactical Imports, model Omni Hybrid, multi-caliber pistol, bearing serial number NS336111; and (3) a Radical Firearms, model RF-15, 7.62 caliber rifle, bearing serial number 20008068.

6

## July 29th, 2024

19. On July 29, 2024, at approximately 5:40 PM, UC-1, UC-6, and the CI conducted a controlled purchase of two (2) firearms, ammunition, and accessories, from **OSBORN** and Hermosillo near the residence of 2129 SW 20th Street, Oklahoma City, Oklahoma.

20. At 2129 SW 20th Street, UCs observed **OSBORN's** truck, bearing Oklahoma Tag #MRQ907, and both **OSBORN** and Hermosillo standing outside of the truck on the driver's side. UC-1 introduced UC-6 and advised they were interested in purchasing the firearms.

21. Hermosillo handed UC-6 a firearm, specifically a Tokarev, model TBP 12, 12-gauge shotgun, bearing serial number 52-H22YB-013384. UC-6 advised that he liked the firearm and agreed to purchase it for $1,000.00.

22. **OSBORN** then advised that he had an additional pistol for sale and showed UC-6 the pistol which was in the front driver's seat of **OSBORN's** truck. There was an additional unidentified Hispanic male passenger wearing a hoodie (also present during the previous sale on July 26th, 2024). The firearm **OSBORN** handed UC-6 was a Palmetto State Armory, model Rock 5.7, 5.7X28mm caliber, semi-automatic pistol, bearing serial number RK034950.

23. While UC-6 looked at the pistol, **OSBORN** stated:

> "I'm trying to get receipts, but you know, I found this group on **Facebook** that people be selling shit, but when you start asking too many questions they are like, man, the only reason I'm selling this gun is so you can keep it, I don't want you selling a gun that's in my name. And I'm just like 'No I'm gonna keep it, I'm gonna keep it.'"

24.     UCs then engaged **OSBORN** regarding the price of the firearms. UC-6 advised **OSBORN** and Hermosillo that UCs could not spend $3,000-to-$4,000 on firearms because they would not be able to make a profit reselling the firearms.

25.     **OSBORN** advised that he had a bunch of firearm transactions lined up so that he could continue to make money selling firearms.

26.     UC-6 told **OSBORN** and Hermosillo that UC-6 was taking a trip to the U.S./Mexico border in a couple of days and that any firearm UC-6 was able to acquire would be taken to "his people" at the border and then into Mexico.

27.     Upon receiving this information, **OSBORN** advised the UCs that he would see what firearms he could procure to give to the UCs before their trip to the U.S./Mexico border. UC-1 then provided a total of $2,200.00 in prerecorded government funds for the two (2) firearms and one-hundred and twenty-three (123) rounds of ammunition.

## August 1st, 2024

28.     On August 1, 2024, UC-1, UC-3, UC-4, and UC-6 met **OSBORN** and Hermosillo near 2127 SW 20th and 2129 SW 20th in Oklahoma City, Oklahoma, as part of another prearranged firearm transaction.

29.     Upon arrival, UCs communicated with Hermosillo advising him of their arrival. **OSBORN** was then observed arriving in his pickup truck bearing Oklahoma Tag #MRQ907. UC-1 and UC-6 exited the UCV and saw Hermosillo, on foot, walk out from behind a wall to the passenger side of the UCV. Hermosillo was observed carrying a plastic grocery bag, later found to contain four (4) firearms: (1) a Glock, model 17, 9mm pistol, bearing serial number CDNT096; (2) a Ruger, model Security-9, 9mm pistol,

8

bearing serial number 382-54919; (3) a Glock, model 43X, 9mm pistol, bearing serial number BLVY274; and (4) a Canik, model TP9 SF Elite, 9mm pistol, bearing serial number T6472-20 BH 26046.

30. Hermosillo advised that the Glock pistols were brand new and had never been fired. UC-6 purchased the four (4) firearms for $3,000.00 in prerecorded government funds. UCs then observed **OSBORN**, in the driver's seat of his truck, depart.

### August 3rd, 2024

31. On August 3, 2024, UC-2 engaged in recorded SMS communications with **OSBORN** via telephone number **405-900-1428 (SUBJECT PHONE)**. The conversation stemmed from **Facebook** communications between **OSBORN** and the CI. During those **Facebook** conversations, **OSBORN** provided CI with his phone number so that the CI's "people" could contact **OSBORN** for the purpose of purchasing a firearm.

### August 4th, 2024

32. On August 4, 2024, UC-2 exchanged SMS messages with **OSBORN** via the **SUBJECT PHONE** telephone number. During the conversation, UC-2 and **OSBORN** agreed to meet at **OSBORN's** residence—which he provided as 226 SE 55th Street, Oklahoma City, Oklahoma 73129—to purchase a firearm for $1,200.00.

### August 6th, 2024

33. On August 6, 2024, UC-2 arrived at 226 SE 55th Street, Trailer #13, Oklahoma City, Oklahoma 73129, at approximately 1:29 PM, to conduct the controlled purchase of a firearm. When UC-2 arrived, he observed **OSBORN** walking from

9

Trailer #13 carrying a black hard case. UC-2 contacted **OSBORN** who got in the front seat of the UCV.

34. During their conversation in the UCV, **OSBORN** identified vehicles belonging to him, specifically, a black Chevrolet pickup truck parked at Trailer #13. While discussing the firearm purchase, a small child exited Trailer #13 and walked to the UCV passenger side where **OSBORN** was located. **OSBORN** identified the child as his "little cousin."

35. During the transaction, **OSBORN** advised UC-2 that he would need to keep the case and ammunition to the firearm unless UC-2 was willing to pay additional money. When UC-2 declined and advised **OSBORN** that the firearms would be transported "up north" and sold to a third party for profit, **OSBORN** replied, "cool cool" and then removed the ammunition and case.

36. When UC-2 asked **OSBORN** if he had additional firearms for sale, **OSBORN** replied, "not right now." **OSBORN** stated that he "just be buying shit off there" referring to a social media group where the pistol was listed for sale. **OSBORN** inquired what firearms UC-2 was looking for and specifically asked whether he was interested in "AR's, ARP's," or semi-automatic rifles and pistols.

37. The firearm **OSBORN** presented to UC-2 is a Glock, model 43, 9mm pistol, bearing serial number BNPD554, with an aftermarket slide and flash suppressor. **OSBORN** advised that he shot the firearm at the gun range "yesterday."

38. When UC-2 restated that he was "taking" the firearms to sell them, **OSBORN** replied, "you gotta make that money man." UC-2 then handed $1,200.00 in prerecorded government funds to **OSBORN** for the firearm.

### August 9th, 2024

39. On August 9, 2024, at approximately 3:32 p.m., UCs met with **OSBORN** at 2414 South Shartel, Oklahoma City, Oklahoma, 73109, to conduct another firearm transaction arranged previously via text message and phone calls with **OSBORN** at the **SUBJECT PHONE** telephone number.

40. Upon the UCs' arrival, **OSBORN** climbed into the front passenger seat of the UCV holding a bag with several firearms inside. Several other associates of **OSBORN**, including Gerardo Daniel Herrera, were observed standing in front of the UCV in the street.

41. Once the transaction had been completed for the firearms, an arrest signal was given by the UCs, and law enforcement took **OSBORN** into custody.

42. **OSBORN's** phone, which was on his person, was seized by ATF Agents as part of **OSBORN's** arrest. This phone is believed to be the **SUBJECT PHONE** that **OSBORN** used to communicate with UCs and the CI throughout the course of ATF's investigation including on August 9, 2024.

### August 10th, 2024

43. On August 10, 2024, **AUSTIN GAGE OSBORN** was charged by criminal complaint with trafficking firearms in violation of 18 U.S.C. § 933(a)(1). *See* MJ-24-612-AMG, Doc. 2.

11

## **September 5th, 2024**

44. On September 5, 2024, the Federal Grand Jury returned an eleven-count Indictment. In Count 1, **OSBORN** was charged with trafficking firearms in violation of 18 U.S.C. § 933(a)(1). In Count 11, **OSBORN** was charged with engaging in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a). *See* CR-24-362-SLP, Doc. 14.

## CONCLUSION

45. I believe that, based on the foregoing facts, there is probable cause to believe that **AUSTIN GAGE OSBORN** trafficked firearms in violation of 18 U.S.C. § 933(a)(1), and engaged in the business of dealing firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A) and 923(a). Moreover, based on SMS text message exchanges with **OSBORN** at the **SUBJECT PHONE** number on August 3, 2024, and August 4, 2024, there is probable cause to believe that evidence of engaging in the business of dealing firearms without a license and trafficking firearms is located on the **SUBJECT PHONE**.

46. Therefore, I respectfully request that this Court issue a search warrant for the **SUBJECT PHONE**, described in **Attachment A**, authorizing seizure of the items described in **Attachment B**.

Respectfully submitted,

_____
DAVID McCAULEY
Special Agent, Bureau of Alcohol,
Tobacco, Firearms and Explosives

Subscribed and sworn to before me on November __19th__, 2024

_____
CHRIS M. STEPHENS
United States Magistrate Judge
Western District of Oklahoma

## ATTACHMENT A

### Property to Be Searched

The property to be searched is an Android, model Revvl 5+, cellular telephone, with phone number +1 (405) 900-1428, and IMEI#357492491529622 (hereinafter **SUBJECT PHONE**).  The **SUBJECT PHONE** is currently in the possession of ATF within the Western District of Oklahoma.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## ATTACHMENT B

## Particular Things to be Seized

## LIST OF ITEMS TO BE SEIZED

1. All records on the **SUBJECT PHONE**, described in **Attachment A**, that relate to violations of 18 U.S.C. §§ 933(a)(1), 922(a)(1)(A), and 923(a) that involve **AUSTIN GAGE OSBORN, Gerardo Daniel Herrera, and Jose Adrian Hermosillo** including:

   a. any information recording **OSBORN's** schedule or travel;

   b. any text messages, instant messages, or electronic messages communicating between known or unknown co-conspirators;

   c. any photos of stolen items;

   d. any photos of firearms;

   e. any phone records between known or unknown co-conspirators;

   f. lists of customers and related identifying information including images and videos;

   g. types, quantity, and prices of firearms that were purchased by straw purchasers and/or trafficked as well as dates, places, and amounts of specific transactions;

   h. any information related to the sources of firearms, including: names, addresses, phone numbers, or any other identifying information;

   i. all bank records, checks, credit card bills, account information, and other financial records;

   j. all communications between co-defendants **OSBORN, Gerardo Daniel Herrera, and Jose Adrian Hermosillo;**

   k. evidence of user attribution showing who used or owned the **SUBJECT PHONE** at the time the things described in this warrant were

2

created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

1. records of Internet Protocol addresses used;

2. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored on the **SUBJECT PHONE**.